UNITED STATES of America, Plaintiff,

v.

Stanley J. MARSHALL, Defendant.

No. 88–30051.

United States District Court,
C.D. Illinois,
Springfield Division.

March 1, 1989.

Byron G. Cudmore, Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Burton H. Shostak, St. Louis, Mo., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Here, the Court must determine whether the blotter paper upon which chemical LSD is sprayed is to be included in calculating the drug's weight.

If so, then the amount far exceeds the ten grams required to kick in the enhanced sentencing provision, whereas if not, no enhanced sentencing provision applies.

The only real issue presented to the Court by this stipulated bench trial is whether Defendant distributed sufficient lysergic acid diethylamide (LSD) to fall

within the enhanced sentencing provision of 21 U.S.C. § 841(b)(1)(B)(v), which calls for a minimum sentence of ten years and maximum of life, or instead whether the amount distributed was less than a gram, therefore resulting in no mandatory minimum sentence and a maximum of twenty years under 21 U.S.C. § 841(b)(1)(C).

At the close of the bench trial, after counsel for both sides had orally presented their positions, this Court ruled that the blotter paper is to be included in calculating the weight. We now reaffirm that ruling, and provide our reasons therefor.

### Facts

The parties have stipulated to most of the facts of this case, which need not be set out here in great detail. Suffice it to say that Defendant was actively engaged in selling large numbers of individual dosages, or "hits," of LSD from his headquarters in California to a retail distribution network in Springfield, Illinois. Agents from Illinois and federal law enforcement agencies were able to infiltrate Defendant's operation, largely through the cooperation of two of Defendant's Springfield retailers. The upshot is that enough evidence was amassed to indict the Defendant for distribution of LSD, under 21 U.S.C. § 841(a)(1), and conspiracy to distribute LSD, in violation of 21 U.S.C. § 846. The weights of the LSD distributed by Defendant, the weight of the LSD and the blotter paper, and the number of dosage units have been summarized in the Government's trial memorandum and are reproduced here verbatim:

| Government Exhibit No. | Net Weight of LSD Alone | Gross Weight of LSD and Carrier | LSD Dosage Units |
|---|---|---|---|
| 1 | 137.93 mg | 19.03 grams | 1,999 |
| 2 | 173.38 mg | 23.87 grams | 2,502 |
| 3 | 284.96 mg | 58.54 grams | 5,999 |
| 4 | 48.00 mg | 7.16 grams | 752 |
| 5 | 26.45 mg | 4.72 grams | 499 |
| Total | 670.72 mg | Total 113.32 grams | Total 11,751 |

As these numbers show, Defendant was no small-time operator—he was caught distributing 11,751 "hits" of LSD. Evidence presented at trial showed that each "hit" was sufficient for a several hour or more "trip"—in other words, Defendant distributed enough LSD to get a lot of people high for a long time.

### Applicable Law

Section 841(a)(1) of Title 21 of the United States Code makes it "unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." In the event of a violation of § 841(a)(1), § 841(b)(1)(C) provides for "a term of imprisonment of not more than 20 years." This general sentencing provision, however, has recently been modified by enhanced sentences for violations involving large quantities of drugs. By means of Subtitle A of the Anti–Drug Abuse Act of 1986, Congress provided that if a violation of § 841(a)(1) occurred involving "10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD) ... such person shall be sentenced to a term of imprisonment which may be not less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A)(v). Likewise, if the § 841(a)(1) violation involved "1 gram or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD) ... such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years." 21 U.S.C. § 841(b)(1)(B)(v).

It is thus clear why Defendant has argued so long and hard that the blotter paper should not be included when considering the weight of the LSD. The weight of the LSD alone here is only 670.72 mg.—not even enough for Defendant to fall into the mid-tier enhanced sentence of

§ 841(b)(1)(B)(v). On the other hand, including the weight of the paper brings the total weight of the "mixture or substance containing" the LSD here to 113.32 grams—well over the high-tier enhanced sentence of § 841(b)(1)(A)(v). The difference to Defendant is that between no minimum and a minimum sentence of ten years, and a maximum of twenty years or a maximum of life. High stakes, indeed.

### Discussion

Defendant has launched a two-pronged attack. First, he claims that the weight of the blotter paper should not be included, and so Defendant can only be found guilty of distributing 670.72 mg. of LSD. Second, Defendant argues that the indictment charged him with distribution of over ten grams of LSD, and since, he argues, the proof only shows that he distributed 670.72 mg., the Government has failed to prove the charges leveled against him.

We may summarily dispose of the second prong of Defendant's attack. First, we need not even reach the question inasmuch as we find that the Government has proven that Defendant distributed more than ten grams of a "mixture or a substance containing a detectable amount" of LSD. Second, we agree with the Government that in any event distribution of less than ten grams is a lesser included offense of distribution of more than ten grams, and so need not be separately indicted. And finally, we also agree with the Government, and with other courts, that the enhanced sentencing provisions of § 841(b) are not elements of the offense anyway; these go merely to sentencing, and not to the substance of the offense, and so need not be proven to support a conviction but rather only to support the sentencing level decided upon. *See United States v. Wood*, 834 F.2d 1382, 1388–90 (8th Cir.1987).

Thus we arrive at the main event—whether the blotter paper upon which LSD is sprayed is to be included in determining the weight of the "mixture or substance containing a detectable amount of" LSD. Before we begin our analysis, some background on LSD may be useful, as was presented to the Court by means of expert testimony in oral argument.

The pure chemical compound of LSD is extremely potent—far too potent to be of any use to those who would ingest it. It is therefore necessary to dilute the solid LSD and convert it into an easily ingestible form. The LSD is commonly mixed with an alcohol solution; the LSD retains its solid form in the liquid alcohol, but is diluted and dispersed. The alcohol of the mixture, though, has a tendency to evaporate, and so various means have been devised to capture the diluted LSD in a form stable for a period of time. Among the more common of these methods are placing drops of the alcohol/LSD mixture on small squares of paper or plastic, or placing small drops on sugar cubes or candy. These squares of paper or plastic, and the sugar cubes and candy, are then ingested as the user pleases—he can place the carrier into his drink, or eat the carrier, or he can simply suck the LSD off the paper or plastic carrier.

What, then, given this practical background, did the legislature mean when it said "mixture or substance containing a detectable amount of" LSD? Defendant argues that this ambiguous criminal statute should be strictly construed in Defendant's favor, and we should find that these words only concern the purity or potency of the drug. Defendant points to what he posits are the absurd results of a contrary ruling—he points out that the difference between a twenty year maximum sentence and a maximum sentence of life might turn on the LSD distributor's choice of paper. One "hit" on a heavy piece of cardboard, Defendant suggests, might suffice for the high-tier sentence enhancement, while another dealer might get off with no enhanced sentence merely by using tissues as his blotter paper. Defendant argues that the paper—or the candy or sugar cube—is merely a container, and is not part of the LSD "mixture," nor is it part of any "substance containing a detectable amount of" LSD. Instead, Defendant argues that the alcohol in which the LSD is dispersed is the "mixture" or "substance," and the blotter paper is analogous to the glass vial from

which the mixture was sprayed onto the blotter paper.

The Court cannot but admit that Defendant's arguments have some surface appeal, especially his parade of "absurd results." But this Court's job is not to go about hypothecating extraordinary circumstances in which a legislative scheme breaks down; we live in a real world, and so apply the law to real world facts. Here Defendant has not argued that the paper he used is in any significant way different than that normally used by LSD manufacturers. We are bound to assume that Congress was fully apprised of the various means of ingesting LSD when it passed the Anti–Drug Abuse Act of 1986, and so was aware that one common means of producing ingestible LSD was to spray it on paper of the sort used by Defendant here. We will deal with absurd situations when they are before us; for now we will assume that Congress knew distributors like Defendant would be faced with these enhanced sentencing provisions.

As for Defendant's argument that the blotter paper is merely a container and not part of the "mixture" or "substance," this argument too fails to persuade the Court. The Court can see no real difference between the blotter paper or other medium used for LSD and, say, the "cut" included with cocaine. In the latter case the "cut" would surely be included in calculating the weight under §§ 841(b)(1)(A)(ii) or (b)(1)(B)(ii), and so too should the paper, candy, sugar cube, plastic or whatever other substance used be considered in calculating the LSD's weight.

The wording of the statute itself belies Defendant's argument; since the statute is reasonably clear, there is no need to strictly construe it in Defendant's favor. If the legislature had intended merely to go after LSD regardless of its purity, it could have stopped with the word "mixture"—that word alone encompasses the meaning Defendant ascribes to the statute. But the legislature went on and included the words "or substance containing a detectable amount of" LSD. This latter phrase goes beyond merely the mixture of the drug

itself—it clearly contemplates the medium in which the drug is ingested, be it paper, sugar cube, chocolate chip cookies, or any other "substance." Furthermore, this is not merely an instance of sloppy draftsmanship—Congress clearly understood the import of the words "mixture" and "substance containing a detectable amount of." In the sister provision to the one at question here which deals with phencyclidine (PCP), Congress provided for enhanced sentencing for "100 grams or more of [PCP] or 1 kilogram or more of a mixture or substance containing a detectable amount of [PCP]." 21 U.S.C. § 841(b)(1)(A)(iv). In contrast, the provision at question here speaks only of "mixture" and "substance;" Congress clearly knew how LSD was ingested, and drafted this statute as a practical means of getting at large-scale distributors.

The legislative history of these enhanced sentencing provisions also belies Defendant's argument. As noted in *United States v. Savinovich*, 845 F.2d 834, 839 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988),

> Congress was well aware that its punishment scheme did not focus on "the number of doses of the drug that might be present in a given sample." H.R.Rep. No. 845, 99th Cong., 2d Sess. Part 1 at 12 (1986). Instead, Congress chose a "market-oriented approach" to focus on those "who are responsible for creating and delivering very large quantities of drugs...." *Id.* at 11–12.

Defendant Marshall seems to fit exactly the picture painted in *Savinovich* of the dealer Congress was aiming at with this statute. Defendant was caught distributing 11,751 "hits" of LSD—surely that must qualify as a "very large quantit[y] of [LSD]."

Indeed, the simple mathematics of this situation clearly illustrates the error of Defendant's position. The total weight of the LSD and the paper for the 11,751 "hits" was 113.32 grams; the total weight of the LSD alone was only 670.72 mg. Under Defendant's theory somewhere around 17,500 dosage units would be required just to

meet the mid-tier sentencing enhancement; it would require some 170,000 "hits" for Defendant to come within the high-tier sentencing range. In contrast, under the view championed by the Government around 100 "hits" would have sufficed to subject Defendant to the mid-tier sentencing level, and Defendant crossed into the high-tier level when he distributed just over 1,000 "hits." Surely the Government's position is more in line with Congressional intent than Defendant's—Defendant's view of the statute would result in almost nil deterrent effect, while the Government's will surely give drug dealers cause to reconsider their chosen professions.

This Court is not alone in finding that the weight of the paper is to be included in determining the enhanced sentencing to be applied. A court in Iowa has very recently decided this exact issue just as we have. *United States v. Bishop*, 704 F.Supp. 910 (N.D.Iowa, Feb. 7, 1989). Further, dictum in *United States v. McGeehan*, 824 F.2d 677, 681 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1017, 98 L.Ed.2d 982 (1988), also supports our decision. There, the court distinguished the previous statute, which merely stated "5 grams or more" of LSD, with the current version; the court concluded that under the old statute weight of the paper was *not* to be considered, but under the new version it is. In addition, the decision reached today is in accord with a similar case ruled upon by the undersigned some years back. *People v. Newell*, 77 Ill.App.3d 577, 33 Ill.Dec. 66, 396 N.E.2d 291 (4th Dist.1979).

*Ergo,* for the above reasons, this Court FINDS Defendant GUILTY of conspiring to distribute more than ten grams of LSD, and of distributing more than ten grams of LSD, as charged in Counts I and VI of the superceding indictment in this case.