**Bradley J. SOLBERG, et al.**

v.

**INLINE CORP. and Dale Thornby.**

**Civ. No. 4–89–650.**

United States District Court,
D. Minnesota,
Fourth Division.

June 29, 1990.

---

Marshall H. Tanick, Mansfield & Tanick, Minneapolis, Minn., for plaintiffs.

Joseph A. Nilan, Lang, Pauly & Gregerson, Ltd., Minneapolis, Minn., for defendants.

## ORDER

ROSENBAUM, District Judge.

Before the Court are motions filed by both plaintiffs and defendants in this putative class action. Plaintiffs move for class certification, and defendants seek summary judgment and attorney's fees. Based on the files, records, proceedings, and oral ar-

guments herein, and for the reasons set forth below, defendants' motion for summary judgment is granted and defendants' motion for attorney's fees is denied. In light of the disposition of defendants' summary judgment motion, this Court need not address questions concerning the plaintiff class.

Inline Corporation (Inline) is a Minnesota corporation which packages products manufactured by others. Dale Thornby is Inline's president and its sole shareholder. The six named plaintiffs are former employees of Inline. Plaintiffs bring this action under the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (WARN).[1] Jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 2104(a)(5).

Plaintiffs, seeking to represent more than two hundred other former employees, allege defendants violated WARN by failing to give sixty days notice prior to conducting a mass layoff. Defendants reply that WARN's notice provisions were not implicated since the plaintiffs were part-time employees and no mass layoff occurred.

It is agreed that, prior to 1989, Inline employed about 30 people. In early 1989 Inline received a major contract from Eastman Kodak, Co., which would vastly increase Inline's business during the contract's duration. In order to service this contract, Inline hired over 300 additional employees between January and May 1989. The contract was cancelled by Eastman Kodak, in late May 1989. As a result of the loss of this business Inline began discharging employees. Between May and October 1989, Inline laid off all the new hires. By November 30, 1989, Inline's work force was reduced to 32.

The six plaintiffs were hired between January and May 1989, and were discharged between June and July 1989. None of the plaintiffs had worked at Inline for six months or more.[2]

## I. The Summary Judgment Motion

### A. The Summary Judgment Standards

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Prior to the Federal Rules of Civil Procedure and notice pleading, motions to dismiss a complaint or strike a defense were the primary tools to prevent factually insufficient claims from proceeding to trial. *Id.* Under notice pleading, summary judgment assumes this integral function. *Id.*

Summary judgment may be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. The party opposing summary judgment must produce concrete facts demonstrating there is a genuine issue of fact for trial. *Buford v. Tremayne,* 747 F.2d 445, 447 (8th Cir.1984).

### B. The Statute

WARN was passed on August 4, 1988, and became effective February 4, 1989.[3] The statute, *inter alia,* requires certain

---

1. Plaintiffs initially also sought relief under an insurance notification provision of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1166 (COBRA). COBRA is an amendment to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* (ERISA). Plaintiffs, on their own motion, have withdrawn this claim.

2. Only eight employees discharged between May and October 1989, had worked at Inline for over six months.

3. Only three decisions applying WARN are reported: *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460 (S.D.N.Y.1989); *Finkler v. Elsinore Shore Assocs.,* 725 F.Supp. 828 (D.N.J. 1989); and *Hotel Employees Restaurant Employees Int'l Union, Local 54 v. Elsinore Shore Assocs.,* 724 F.Supp. 333 (D.N.J.1989). None involves the part-time employee question presented here.

business enterprises which employ more than 100 employees to provide sixty days notice before conducting a "mass layoff." This notice must be given to affected employees, the state dislocated worker unit, and the local government unit within which the layoff is to occur. 29 U.S.C. §§ 2101(a) and 2102(a). "Mass layoff" is statutorily defined.[4] WARN provides that aggrieved employees may sue an employer who violates the statute's notice provisions in federal district court. 29 U.S.C. § 2104(a)(5).[5]

The present dispute turns on whether a mass layoff, in fact, occurred. For purposes of this case, the definition of mass layoff hinges on the definition of "part-time employee." WARN defines a part-time employee as "an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required." 29 U.S.C. § 2101(a)(8).

## C. The Parties' Contentions

Defendants claim that WARN is invoked when full-time employees are terminated,

citing 29 U.S.C. § 2101(a)(3) and § 2102(d). According to defendants, only eight of the discharged employees were full-time employees. It is defendants' position that no mass layoff occurred because the requisite number of full-time employees was never discharged. Defendants argue that, except for these eight full-time employees, all of those hired and discharged in 1989 were part-time employees within the statutory definition of 29 U.S.C. § 2101(a)(8). As a result, defendants contend that WARN was not implicated and they had no duty to provide WARN's notice.

Plaintiffs tacitly acknowledged at oral argument that only eight full-time employees were terminated and that the rest of the almost 300 people released were part-time. But it is plaintiffs' view that, notwithstanding the statutory definition of "part-time employee" given in 29 U.S.C. § 2101(a)(8), a technical and literal reading of that definition must not prevail over their proposed construction which they assert will further the claimed intent of the legislature. Specifically plaintiffs assert a)

---

**4.** The statute defines "mass layoff" in § 2101(a)(3)(B) as follows:

> (a) Definitions. As used in this Act—
> ....
> (3) the term "mass layoff" means a reduction in force which—
> ....
> (B) results in an employment loss at the single site of employment during any 30–day period for—
> (i)(I) at least 33 percent of the employees (excluding any part-time employees); and
> (II) at least 50 employees (excluding any part-time employees); or
> (ii) at least 500 employees (excluding any part-time employees)
> ....

Further, § 2102(d) provides
> (d) Determinations with respect to employment loss. For purposes of this section, in determining whether a ... mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2(a)(2) or (3) [29 U.S.C. § 2101(a)(2) or (3)] but which in the aggregate exceed that minimum number, and which occur within any 90–day period shall be considered to be ... a mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and causes and

are not an attempt by the employer to evade the requirements of this Act.

**5.** The remedies for a violation are set forth in § 2104(a)(1):

> (a) Civil actions against employers. (1) Any employer who orders a plant closing or mass layoff in violation of section 3 of this Act shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—
> (A) back pay for each day of violation at a rate of compensation not less than the higher of—
> (i) the average regular rate received by such employee during the last 3 years of the employee's employment; or
> (ii) the final regular rate received by such employee; and
> (B) benefits under an employee benefit plan described in section 3(3) of the Employee Retirement Income Security Act of 1974 (29 U.S.C. 1002(3)), including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred.
> Such liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer.

canons of statutory construction permit departures from literal interpretation, b) the legislative history of WARN reflects a legislative intent to include only seasonal workers and employees who work less than 20 hours per week within the definition of "part-time employee," c) remedial statutes such as WARN must be given a broad reading, and d) parallel state plant closing laws which are claimed to be WARN's ancestors exclude only seasonal and temporary workers.[6]

### D. Analysis

■ "[The] starting point, as in all cases involving statutory interpretation, 'must be the language employed by Congress.'" *United States v. Bishop*, 894 F.2d 981, 985 (8th Cir.1990) (*quoting, United States v. Goodyear Tire and Rubber Co.*, — U.S. ——, 110 S.Ct. 462, 467, 107 L.Ed.2d 462 (1989)). It is certain that if a literal application of a statute would result in an absurdity a court may look beyond the legislature's words. *Public Citizen v. United States Dep't of Justice*, — U.S. ——, 109 S.Ct. 2558, 2566, 105 L.Ed.2d 377 (1989) (citations omitted). *See also Sierra Club v. Clark*, 755 F.2d 608, 615 n. 9 (8th Cir. 1985).

■ WARN defines "part-time employee" clearly and unambiguously. Part-time employees are workers employed less than six months. 29 U.S.C. § 2101(a)(8). Normally the plain meaning of a statute will control. *Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296–97 n. 29, 57 L.Ed.2d 117 (1978). Plaintiffs, however, urge this Court to look beyond the plain language of the statute to discern a deeper meaning.

Plaintiffs argue at length that a plain reading of WARN's terms produces an unjust result. Plaintiffs' arguments are unpersuasive. Plaintiffs first point to the legislative history surrounding the adoption of the six month provision in 29 U.S.C. § 2101(a)(8). They claim this is an unusual definition of "part-time," emerging from the conference committee. They assert that "part-time employee" was never intended to encompass employees like the plaintiffs, but rather, was meant to include seasonal and what they consider to be "true" part-time employees (those working fewer than 20 hours per week).

The Court finds that, contrary to plaintiffs' position, the legislative history supports a straightforward reading of the "part-time" definition. The House Conference Committee Report discussed the "part-time employee" definition:

> "Part-time employee". The Senate Amendment defines a "part-time employee" as one who is hired to work an average of fewer than 15 hours per week. It also defines a "seasonal employee" as one who is hired for a period not to exceed 3 months per year to do work that is seasonal in nature. The Conference Agreement combines these concepts into a single definition of "part-time" employee, which includes employees who work fewer than 20 hours per week or who have worked fewer than 6 months in the 12–month period prior to the point at which the employer is required to serve notice. The definition of "seasonal employee" is therefore eliminated.

H.R. Conf. Rep. No. 576, 100th Cong., 2d Sess. 1045, 1047, *reprinted in* 1988 U.S. Code & Admin. News 2078, 2080.

The House was clearly concerned about temporary workers. For its part, the Senate was concerned about seasonal workers and those working fewer than 15 hours per week. The conference committee crafted a definition addressing both concerns. The first part of § 2101(a)(8) includes workers working fewer than 20 hours per week; the second, encompassing both seasonal and temporary workers, employs the 6 month language.

This statute has been considered by the Department of Labor. The Secretary of

---

**6.** Plaintiffs had initially argued that defendants' summary judgment motion was premature because further discovery pursuant to Rule 56(f), Federal Rules of Civil Procedure, was necessary.

This Court, in an order dated December 20, 1989, permitted further discovery related to the "part-time" defense.

Labor, pursuant to 29 U.S.C. § 2107(a), has promulgated regulations under WARN which provide further support for a literal interpretation of § 2101(a)(8):

> (h) Part-time employee. The term "part-time" employee means an employee who is employed for an average of fewer than 20 hours per week or who has been employed for fewer than 6 of the 12 months preceding the date on which notice is required, including workers who work full-time. This term includes workers who would traditionally be understood as short-term, "seasonal" employees.

20 C.F.R. § 639.3(h) (1989). "[A]n agency's interpretation of the statute that it is charged with administering is entitled to considerable deference." *Groseclose v. Bowen*, 809 F.2d 502, 505 (8th Cir.1987). (citing *Department of Social Services v. Bowen*, 804 F.2d 1035, 1038 (8th Cir.1986)).

Plaintiffs next argue that the remedy provision of WARN, 29 U.S.C. § 2104(a)(1), supports their reading of § 2101(a)(8). In fine, they argue that since there is a remedy for those employed for short duration, Congress could not have intended to include newly hired full-time employees within the definition of "part-time employee." Plaintiffs' argument is erroneous. While part-time employees are not counted in determining whether a mass layoff has occurred, if such a layoff does occur notice must be given to all "affected employees." 29 U.S.C. §§ 2101(a)(5) and 2102(a)(1). *See also* 20 C.F.R. 639.6(b) (1989) ("While part-time employees are not counted in determining whether plant closing or mass layoff thresholds are reached, such workers are due notice."). The § 2104(a)(1) remedy is entirely consistent with the legislative intent to provide protection for all workers, but only when a mass layoff has occurred.

 Plaintiffs correctly note that WARN is a remedial statute and must be construed broadly. *See, e.g., Belland v. Pension Benefit Guar. Corp.*, 726 F.2d 839, 844 (D.C.Cir.), *cert. denied*, 469 U.S. 880, 105 S.Ct. 245, 83 L.Ed.2d 183 (1984). But such a view does not counsel a court to disregard entirely the plain meaning of the words used by Congress. *Id.* As dis-

cussed, Congress' intent was to exclude "part-time employees" from the calculation of a mass layoff, not to exclude them from protection once such a layoff occurs. Thus, by enforcing the law, as Congress has written it, this Court is effectuating WARN's remedial purpose.

The clever minds of zealous advocates have raised the specter of vicious employers who would circumvent WARN by hiring workers for 5 months and 29 days and then firing them, over and over. The scenario is inherently implausible. It presupposes the economic silliness of an employer who continually hires, fires, and rehires employees to evade the notice requirement. This Court will not speculate about " 'extraordinary circumstances in which a legislative scheme breaks down; we live in a real world, and so apply the law to real world facts.' " *United States v. Bishop*, 894 F.2d 981, 986 (8th Cir.1990) (*quoting United States v. Marshall*, 706 F.Supp. 650, 653 (C.D.Ill.1989)). In this case Inline had a contract which called for a great deal of labor. For whatever reason, the contract was cancelled. The reality of the facts belies the plaintiff's tortured hypothetical.

Finally, plaintiffs argue Congress relied on parallel state statutes when drafting WARN. Their argument is that since the state plant closing laws classify newly hired employees as full-time workers, Congress must have meant the same thing. The Court rejects this argument out of hand, crediting Congress with meaning what it says, notwithstanding contrary state law provisions. Parallel state laws are not binding on the Congress of the United States.

Plaintiffs' basic argument is that they were hired as full-time permanent employees and should be counted to determine if a mass layoff occurred. Congress, however, clearly defined "part-time employee" and plaintiffs fit within that definition. Plaintiffs assert seasonal and "true" part-time employees do not place the same type of reliance on the continuity of their employment as do permanent employees. Plaintiffs would construct a world in which a

new hire may rely on an expectation of permanency in the job. The Court finds that this concept is not encompassed in WARN.

## II. Defendants' Motion for Attorney's Fees

The traditional "American Rule" requires litigants, in the absence of legislation providing otherwise, to bear their own costs. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 257–60, 95 S.Ct. 1612, 1621–23, 44 L.Ed.2d 141 (1975). Defendants seek an award of attorney's fees and costs, invoking 29 U.S.C. §§ 1132(g)(1) and 2104(a)(6), as well as Rule 11, Fed.R.Civ.Pro. Defendants seek awards for defending both the withdrawn COBRA claim and the WARN claim, here disposed of by summary judgment.

With respect to the withdrawn COBRA claim, defendants argue that, as the prevailing party, they are entitled to their fees, pursuant to 29 U.S.C. § 1132(g)(1), and are further entitled under Rule 11, because the COBRA claim was not based in fact or warranted by existing law. With respect to the WARN claim, defendants argue that, as the prevailing party, they are entitled to their fees, pursuant to 29 U.S.C. § 2104(a)(6), because they anticipated the summary judgement this Court grants today.

Plaintiffs respond by saying that they made diligent and reasonable inquiries sufficient to satisfy Rule 11, before bringing the COBRA claim and that they took prompt steps to withdraw the claim once it became evident that it was not viable. As for awards under the prevailing party provisions, plaintiffs assert that the standards governing the propriety of attorney fee awards under 42 U.S.C. §§ 1988 and 2000e-5(k) should apply to both COBRA and WARN. Plaintiffs maintain that an award to prevailing defendants should only be made if the action was frivolous, unreasonable, or without foundation. In particular,

they argue that defendants are not entitled to an award for the WARN claim because the suit was not groundless.

They point out that WARN is a new, untested statute; that the interpretation of the provision in question was far from certain; and that the "part-time defense," interposed at a relatively late date, was not an obvious defense, even to the defendants. Further, they believe an award in such a case would have a chilling effect on future plaintiffs seeking to enforce their rights under WARN.

Rule 11 provides for sanctions, including attorney's fees, if a pleading is not well grounded in fact, is not warranted by existing law or a good faith argument for a change in the existing law, or is interposed for an improper purpose. "The standard by which courts are to judge conduct challenged under rule 11 is one of objective reasonableness." *Hartman v. Hallmark Cards, Inc.,* 833 F.2d 117, 124 (8th Cir. 1987). To determine whether a Rule 11 violation has occurred, a court must decide whether the person who signed the pleading conducted a reasonable inquiry into the facts and law supporting the pleading. *O'Connell v. Champion Int'l Corp.,* 812 F.2d 393, 395 (8th Cir.1987).

■ The Court finds no violation of Rule 11. The Court credits plaintiff's counsel when they indicate that they diligently interviewed and instructed their clients. According to their counsel, plaintiffs stated that they did not recall receiving any notice and that their records contained no evidence of receipt of the notice due under COBRA. Under these circumstances, the Court is satisfied that counsel for the plaintiffs satisfied their duties under Rule 11.

■ Defendants' claim for fees based on the prevailing party provision of ERISA, 29 U.S.C. § 1132(g)(1),[7] is unavailing. Five factors assist in determining a claim to attorney's fees under 29 U.S.C. § 1132(g)(1): 1) the degree of the opposing parties' culpability or bad faith; 2) the abil-

---

7. Title 29, United States Code Section 1132(g)(1) provides

In any action under this title ... by a participant, beneficiary, or fiduciary, the court in its

discretion may allow a reasonable attorney's fee and costs of action to either party.

ity of the opposing parties to satisfy an award of attorney's fees; 3) whether an award of attorney's fees would deter other persons acting under similar circumstances; 4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and 5) the relative merits of the parties' positions. *Nachwalter v. Christie*, 805 F.2d 956, 961–62 (11th Cir. 1986) (citations omitted).

In this case, where the worst that can be said is that plaintiffs have failed in their recollection, and when reminded they immediately withdrew their claim, none of the factors favors an award of fees. None will be given.

■ Defendants' claim for attorney's fees under the prevailing party provision of WARN is similarly denied. Under 29 U.S.C. § 2104(a)(6), "[i]n any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee...." Under this provision the award of attorney's fees lies within this Court's discretion.

No court has addressed the propriety of awarding attorney's fees under WARN. To guide the exercise of its discretion, this Court turns to the construction of federal civil rights statutory provisions, 42 U.S.C. §§ 1988 and 2000e–5(k), which authorize an award of attorney's fees to a prevailing party. The Supreme Court set forth the standards for the grant of attorney's fees to successful defendants under § 2000e–5(k) in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), and assimilated those standards into § 1988 in *Hughes v. Rowe*, 449 U.S. 5, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).

Generally, prevailing civil rights plaintiffs are awarded attorney's fees unless special circumstances exist. *Christiansburg*, 434 U.S. at 417, 98 S.Ct. at 698. Conversely, prevailing defendants receive an award only if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700; *Hughes*, 449 U.S. at 14, 101 S.Ct. at 178.

The Court has found, above, that plaintiffs may not prevail on their WARN claim. They have lost. But this is not to be equated with a finding that the claim was "frivolous, unreasonable, or without foundation." The interpretation of the part-time employee provision was an issue of first impression; plaintiffs' suggested interpretation was not accepted by this Court, but it was a position well taken and fairly urged. The policy of encouraging enforcement of remedial statutes like WARN counsels this Court to deny defendants' motion for attorney's fees.

Based upon the files, records, and proceedings herein, IT IS ORDERED that:

1. Defendants' motion for summary judgment is granted.

2. Defendants' motion for attorney's fees is denied.