## In re ARROW TRANSPORTATION COMPANY OF DELAWARE, Debtor.

**Bankruptcy No. 397–34556PSH11.**

United States Bankruptcy Court, D. Oregon.

July 17, 1998.

---

David W. Criswell, Portland, OR, for Debtor.

## MEMORANDUM OPINION

POLLY S. HIGDON, Chief Judge.

The debtor has filed a motion for summary judgment on its objection to the proof of claims filed by the International Brotherhood of Teamsters, Tankhaul Division, International Brotherhood of Teamsters, Local 81 and International Brotherhood of Teamsters, Local 162. ("The Union Group"). The original claims contained several identical bases for payment including a claim under the WARN Act. All but two have now been resolved. The parties still disagree on the extent to which the Union Group's claim for accrued prepetition vacation pay should be allowed. In addition the debtor has made a demand for attorney fees under the WARN Act as the "prevailing party."

### A. Prepetition Vacation Pay

#### 1) Amount

In support of its motion for summary judgment the debtor submitted an affidavit from Conrad Meyers, a professional employed by the court to aid the debtor in its reorganization. Attached to that affidavit as Exhibit B is a spread sheet which shows the amount of priority and general unsecured vacation pay asserted due to each of the debtor's union employees. The Union Group presented no evidence to rebut the accuracy of those figures within the time given under the local rules for response to the debtor's summary judgment motion. Consequently, the court accepts the accuracy of the debtor's figures.

#### 2) Application of Section 502(d) [1]

The debtor argues that the admittedly otherwise valid prepetition claims of 111 of its former employees for vacation pay should be disallowed under § 502(d) of the Bankruptcy Code because those employees received unauthorized postpetition transfers of vacation pay which they have not repaid the estate.

Section 502(d) provides, in relevant part,

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any transferee of a transfer avoidable under section ... 549 ... of this title, unless such ... transferee has paid the amount, or turned over any such property, for which such ... transferee is liable under section ... 550 of this title.

Section 549 allows the trustee (or debtor-in-possession) to avoid

...a transfer of property of the estate—

(1) that occurs after the commencement of the case; and ...

(B) is not authorized under this title or by the court.

The parties agree that postpetition the debtor paid each of the 111 employees for accrued vacation time. In each case the amount which was paid exceeded the amount of vacation pay actually accrued postpetition. The excess amounts paid reflect amounts earned for accrued prepetition vacation pay. These are the claim amounts at issue. The court has not entered any order approving payment of these amounts.

The Union Group contends that the postpetition payments were authorized by the Bankruptcy Code and the terms of their collective bargaining agreement. Consequently the claims should not be disallowed under § 502(d).

Vacation benefits are addressed in Article 45 of the collective bargaining agreement. Under this article employees earn vacation pay based on years of service. Each week 1/52 of an employee's annual vacation pay accrues. However, any accrued vacation pay is not due and payable by the employer until "the pay period immediately preceding the period time off is to be taken." Thus, under the collective bargaining agreement the debtor's obligation to pay accrued vacation pay benefits arises in the pay period just preceding the date when the employee chooses to take his vacation.

Prior to the bankruptcy filing the 111 employees had each notified the debtor of their chosen vacation dates. While Arrow decided, after filing, to refuse to allow its employees,

---

1. All section references are to 11 U.S.C. § 101 et seq. unless otherwise stated.

postpetition, to schedule vacations, it decided, "as a matter of industrial relations, [to] allow ... employees [who, prepetition, had scheduled vacations] to take their vacations, postpetition, with pay." Affidavit of Conrad Meyers in support of Arrow's Motion for Summary Judgment ("Meyers Affidavit") page 3, lines 16–17.

The Union Group's analysis begins with 11 U.S.C. § 1113(f). This section provides:

> No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

The Ninth Circuit Court of Appeals has rendered few decisions interpreting and applying § 1113. Therefore this court has turned for guidance to the Second Circuit which, in 1990, issued *Ionosphere Clubs, Inc.,* 922 F.2d 984 (2nd Cir.1990), one of the first and subsequently generally followed circuit opinions interpreting and applying that section. It held that "Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113." *Id.* at 990.

The issue before the *Ionosphere* court was the effect of § 1113 on the application of the automatic stay provisions of § 362 to nonbankruptcy proceedings to enforce a collective bargaining agreement. It interpreted § 1113(f) as "evinc[ing] an intent that other provisions of the Bankruptcy Code are inoperable to the extent that they allow a debtor to bypass the requirements of § 1113. The language of the statute indicates that Congress intended § 1113 to be the sole method by which a debtor could terminate or modify a collective bargaining agreement and that application of other provisions of the Bankruptcy Code that allow a debtor to bypass the requirements of § 1113 are prohibited." *Id.* at 989.

In this case the court earlier had found that the conditions of § 1113 had not all been met and had declined to approve the debtor's motion to reject the collective bargaining agreement between itself and the unions. Under *Ionosphere,* therefore, the debtor continues to be bound by the terms of the collective bargaining agreement and may not unilaterally either terminate or modify its terms.

Article 45 requires *all* accrued and unpaid vacation pay to be paid in the pay period just prior to the chosen vacation dates. The debtor's failure to pay any portion of such accrued amount at the time required by the Article because that portion was accrued prepetition would constitute a prohibited unilateral modification of the collective bargaining agreement. The debtor in fact paid that amount; however, it now asks the court to find such payments were an unauthorized transfer under § 549 and consequently should be disallowed under § 502(d) until returned to the estate. To hold for the debtor would be tantamount to allowing it to use other provisions of the Bankruptcy Code to unilaterally modify Article 45.

The court agrees with the Union Group that, having decided to allow its employees, who, before the filing had scheduled their vacation dates to take that scheduled vacation, Arrow was bound, under the terms of the collective bargaining agreement, to pay those employees their earned vacation pay in the pay period just prior to the vacation regardless of whether that pay was earned prepetition or postpetition. The prepetition amounts paid were "authorized under this title" under § 549(1)(B)because required under § 1113 and the unrejected collective bargaining agreement. The payments being authorized, the provisions of § 502(d) are inapplicable.

## B. Attorney's Fees Under The WARN Act

The debtor argues that because the Union Group has withdrawn its WARN Act claim it is the "prevailing party" under that Act and is entitled to attorney fees incurred in the defense of that portion of the Union Group's claims.

The relevant sections of the WARN Act provide:

> (5) A person seeking to enforce ... liability [under the WARN Act] ... may sue ... in any district court of the United States for any district in which the violation is

alleged to have occurred, or in which the employer transacts business. (6) In any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. 29 U.S.C. § 2104(a).

 The Union Group contends that this section does not allow an award of attorney fees in this case because the controversy is before the court in the form of a "claim" filed in bankruptcy court rather than a "suit" filed in district court. This argument is easily disposed of. First, it is beyond dispute that this court has subject matter jurisdiction over claims filed in bankruptcy court which rest on the WARN Act.

District courts have original jurisdiction over bankruptcy cases "[n]otwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts." 28 U.S.C. § 1334(b). [Allowance of claims procedures] are core proceedings. *Id.* § 157(b)(2)(B) and are therefore "squarely within [the bankruptcy court]'s subject matter jurisdiction".

*In re Parker North American Corporation (Parker North American Corporation v. Resolution Trust Corporation)*, 24 F.3d 1145, 1149 (9th Cir.1994) citing *Tamposi v. FDIC*, 159 B.R. 631, 634 (Bankr.D.N.H.1993). By filing proofs of claim the Union Group also consented to the court's personal jurisdiction. *In re PNP Holdings Corporation (Tucker Plastics, Inc. v. Pay 'N Pak Stores, Inc.)*, 99 F.3d 910 (9th Cir.1996).

 Alternatively, the Union Group argues that the debtor is not a "prevailing party" on the WARN Act claim because it voluntarily withdrew that claim prior to the hearing on the parties' motion for summary judgment. The court could find no WARN Act case on point. 29 U.S.C. § 2104(a) is what is commonly called a fee shifting statute. Therefore, it has looked to courts' rulings on this issue under other federal fee shifting statutes.

The Union Group's argument assumes that a party must prevail in a trial on the merits in order to be deemed a "prevailing party" within the meaning of the fee shifting provision of the WARN Act. In *Corcoran v. Columbia Broadcasting System*, 121 F.2d 575

(9th Cir.1941) the court rejected a similar argument under the fee shifting provisions of the Federal Copyright Act.

In *Corcoran* the plaintiff filed suit against the defendant alleging infringement of copyright. The defendant responded with a motion to dismiss and a motion "for further and better statement of particulars." The motion to dismiss was denied, but the motion for better particulars was granted with leave to the plaintiff to amend its complaint. The plaintiff did not amend but moved to dismiss his complaint. The motion to dismiss was granted with an allowance of costs and attorney fees to the defendant pursuant to the fee shifting provision. This section provided that the court "may award to the prevailing party a reasonable attorney's fee as part of the costs." *Id.* at 575.

On appeal the plaintiff argued that the award of fees was improper because the defendant was not a " 'prevailing party' within the meaning of the statute." The court disagreed, holding that:

[t]he authority given [by the statute] is not in terms limited to the allowance of fees to a party who prevails only after a trial on the merits. Where, as here, a defendant has been put to the expense of making an appearance and obtaining an order for clarification of the complaint, and the plaintiff then voluntarily dismisses without amending his pleading, the party sued is the prevailing party within the spirit and intent of the statute even though he may, at the whim of the plaintiff, again be sued on the same cause of action. *Id.*

I find that the holding of *Corcoran* is equally applicable to the fee shifting provision of the WARN Act although here the controversy has played out within the context of a claims objection procedure. Where, as in this case, the opposing party is put to the expense of filing pleadings which controvert the WARN Act claim, it is a prevailing party within the "spirit and intent" of the statute regardless of whether the claimant later withdraws its claim or the objecting party prevails on the merits. *See also In Schmidt v. Zazzara*, 544 F.2d 412 (9th Cir.1976) (Party who succeeds on motion to compel compliance with consent

judgment is a "prevailing party" despite the fact that she did not prevail in a trial on the merits).

█ Finally, the Union Group argues that as a prevailing party in opposition under the WARN Act the debtor is not entitled to an award of attorney fees because the claim filed by the Union Group was not frivolous or filed in bad faith. The debtor argues, however, that as the prevailing party it is entitled to an award of attorney fees "unless special circumstances would render such an award unjust."

In *Solberg v. Inline Corp.*, 740 F.Supp. 680 (D.Minn.1990) the court held that the fee shifting provision of the WARN Act created separate standards for an award of attorney fees to a prevailing party depending on whether that party was the plaintiff or the defendant. Under the standards adopted by the *Solberg* court, prevailing plaintiffs were to be awarded attorney fees unless special circumstances existed that would make such an award unjust. By contrast, prevailing defendants were to be awarded attorney fees only if the "plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." The Third Circuit reached a similar conclusion in *United Steelworkers of America v. North Star Steel Company, Inc.*, 5 F.3d 39 (3rd Cir.1993).

Both *Solberg* and *North Star* followed the separate standards set by the Supreme Court in *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978) for awarding attorney fees under the fee shifting provisions of the Civil Rights Act. In applying the standards under the WARN Act both courts relied on the Supreme Court's admonition that "similar language [in fee-shifting statutes] is 'a strong indication' that they are to be interpreted alike." *United Steelworkers of America v. North Star Steel Company, Inc.*, 5 F.3d at 39 citing *Independent Fed'n of Flight Attendants v. Zipes*, 491 U.S. 754, 109 S.Ct. 2732, 105 L.Ed.2d 639 (1989).

*In re Fogerty v. Fantasy*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994) the Court clarified its ruling in *Zipes*. In *Fogerty* the appellant, the prevailing plaintiff in a copyright infringement action, appealed from a decision of the district court denying him an award of attorney fees under the Copyright Infringement Act. The Act allowed the court, in its discretion, to "award a reasonable attorney's fee to the prevailing party as part of the costs." This language is virtually identical to that contained in the Civil Rights Act and interpreted by the Supreme Court in *Christiansburg*. Consequently, relying on that case and *Zipes*, the district court had applied the *Christiansburg* standards.

On appeal the Supreme Court conceded that the language of the fee shifting provision of the Copyright Act was virtually identical to that in the fee shifting provision of the Civil Rights Act interpreted in *Christiansburg*. Nonetheless, it found that the separate standards applied to fee awards in *Christiansburg* should not be applied in determining whether to award fees under the Copyright Act. In doing so it noted that "this normal indication [that similar language should be similarly interpreted] is overborne by the factors relied upon in our Christiansburg opinion that are absent in the case of the Copyright Act." *Id.* at 523, 114 S.Ct. 1023. Specifically it found that "[t]he legislative history of § 505 [of the Copyright Act] provides no support for treating prevailing plaintiffs and defendants differently with respect to recovery of attorney's fees." *Id.* It further found that:

> [t]he goals and objectives of the two Acts are likewise not completely similar [in that] oftentimes in the civil rights context impecunious "private attorney general" plaintiffs can ill afford to litigate their claims against defendants with more resources. Congress sought to redress this balance in part, and to provide incentives for bringing meritorious lawsuits, by treating successful plaintiffs more favorably than successful defendants in terms of the award of attorney's fees. *Id.*

Based on the reasoning and holding in *Fogerty* I conclude that in this controversy under the WARN Act I should not automatically apply the *Christiansburg* standards for award of attorney fees. Rather, I should first look to the legislative history and the goals and objectives of that Act to determine

whether it is appropriate to apply those standards.

*Christiansburg* was a case decided under the Civil Rights Act. The purpose of that Act is to "promote the general welfare by eliminating discrimination based on race, color, or national origin ..." H.R. Doc. No. 124, 88th Cong., 1st Sess., at 14. The Civil Rights Attorney's Fees Awards Act of 1976, which authorized an award of attorney's fees to a prevailing party in a civil rights action, was enacted to "ensure effective access to the judicial process for persons with civil rights grievances." *Hensley v. Eckerhart,* 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In determining the proper standard for awarding fees under the Civil Rights Acts the Court took into account that civil rights plaintiffs operated as private attorney generals to redress societal wrongs.

By contrast, the WARN Act, which requires that employers having 100 or more employees provide those employees with advance notice of any plant closure, was designed to protect not the interest of society at large, but rather those of an individual worker. The stated purpose of the Act is to provide effected employees with "advance notice ... essential to the successful adjustment of the worker to the job loss caused by changing economic conditions [and] to insure that large numbers of workers will not be displaced without warning and planning." 134 Cong. Rec. S8376 (daily ed. June 22, 1988) (Statement of Sen. Kennedy). If an employer fails to provide the required notice, an affected employee may file suit against the employer and, if successful, recover damages equal to his regular pay for each day of the violation. 29 U.S.C. § 2104(a)(1)(A). In a WARN Act action, unlike a Civil Rights action, the plaintiff is not acting to protect any societal grievance. His action is strictly a private one. The considerations which support application of separate standards for awarding fees to prevailing plaintiffs and prevailing defendants in civil rights actions are not present in a WARN Act suit. Consequently there is no basis under the WARN Act for applying the separate standards enunciated in *Christiansburg.*

■ A single standard should apply to an award of attorney fees under the WARN Act. The question remains what that standard should be. The debtor urges the court to adopt the standard used for awarding fees to a prevailing party plaintiff under the Civil Rights Act, that is, fees will be awarded absent some circumstance which makes such an award unjust. In making this argument the debtor is, in effect, asking the court to find that the fee shifting provision of the WARN Act is an adoption of the so-called British Rule, under which fees are awarded to a prevailing party as a matter of course, absent exceptional circumstances.

The plaintiff in *Fogerty* raised an identical argument under the Copyright Act. The Court rejected that argument. In doing so it noted that "[t]he word 'may' clearly connotes discretion. The automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion." *Id.* at 533, 114 S.Ct. 1023. Additionally it noted that:

> we are mindful that Congress legislates against the strong background of the American Rule. Unlike the British Rule where counsel fees are regularly awarded to the prevailing party, it is the general rule in this country that unless Congress provides otherwise, parties are to bear their own attorney's fees. While § 505 [of the Copyright Act] is one situation in which Congress has modified the American Rule to allow an award of attorney's fees in the court's discretion, we find it impossible to believe that Congress, without more, intended to adopt the British Rule. Such a bold departure from traditional practice would have surely drawn more explicit statutory language and legislative comment. *Id.*

Consequently the court concluded that under the fee shifting provision of the Copyright Act, "attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 533, 114 S.Ct. 1023. Additionally, it noted that "there is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised (3)27 " *Id.*

The Union Group argues that the court should exercise its discretion to deny an award of attorney's fees in this case because it withdrew its claim under the Act before the debtor filed its motion for summary judgment. Neither party presented any admissible evidence regarding when the Union Group withdrew its claim. However, in its memorandum in support of its motion for summary judgment the debtor states that it received notice on March 25, 1998 that the International Union was withdrawing its WARN Act claim. In its memorandum in opposition to the debtor's motion the Union Group agrees with that statement. Statements made in legal memoranda are not evidence. However, in light of the Union Group's agreement with the debtor's statements regarding the timing of its notice of the withdrawal of its WARN Act claim, I will accept that statement as true.

The debtor's memorandum in support of its motion for summary judgment contains a four page analysis of the debtor's defenses to the WARN Act claim. It was filed two days after its notice of withdrawal of the claim, on March 27, 1998. Further, although the International Union advised the debtor that it was withdrawing its WARN Act claim, the local unions had not done so as of the date the debtor filed its summary judgment motion. Under these circumstances I find that the fact that the Union withdrew its WARN Act claim prior to the time the debtor filed its motion for summary judgment is not a basis for denying the debtor an award of attorney fees under the Act. The court also notes that the WARN act claims asserted by the Union Group comprised a significant portion of its total claims. It was therefore reasonable for the debtor to spend a significant amount of time and effort responding to that claim. Under these circumstances the court finds that the debtor is entitled to an award of attorney's fees incurred in defense of the WARN Act claim.

## C. Conclusion

The court finds that the debtor's calculations as to the amounts of prepetition vacation pay due to the Union's members should be approved. The court finds that the vacation pay payments made by the debtor post-petition were authorized, indeed mandated, by § 1113(f) of the Bankruptcy Code to be paid pursuant to the unrejected collective bargaining agreement. Consequently, the provisions of §§ 549 and 502(d) are inapplicable and the Union Group's claims for prepetition vacation pay shall be allowed. The court finds that the debtor is a "prevailing party" under the WARN Act and is entitled to an award of attorney's fees incurred in objecting to that claim.

This memorandum opinion contains the court's findings of fact and conclusions of law and pursuant to Fed. R. Bankr.P. 7052, they will not be separately stated.