**In re CARGO, INC., Debtor.**

**Bankruptcy No. X90–00200S.**

United States Bankruptcy Court, N.D. Iowa, W.D.

Feb. 28, 1992.

---

---

Theodore Karpuk, Sioux City, Iowa, for debtor.

Wil L. Forker, Sioux City, Iowa, trustee.

Donald H. Molstad, Sioux City, Iowa, for trustee.

Joseph W. Grant, Omaha, Neb., for WARN Creditors.

Tracy A. Anagnost, Dept. of Justice, Washington, D.C., for U.S. of America on behalf of IRS.

## ORDER RE: MOTIONS FOR SUMMARY JUDGMENT

WILLIAM L. EDMONDS, Bankruptcy Judge.

In these proceedings, former employees [1] of the debtor move for the allowance of their priority wage claims. The case trust-

---

1. There is not complete agreement between the claimants listed in the trustee's claims report (docket no. 196) and the list of movants attached to the motion seeking allowance (docket no. 193). The motion says there are 94 movants. The motion list includes 101 names, but there are at least nine duplications, so there may be only 92 movants including the counsel for the movants. The trustee's claims report recommends disallowance (objects to the allowance) of 106 claims. Of the 106, potentially nine involve two claims by the same person. One of the nine is the counsel for the movants. So there appear to be only 97 different persons whose claims are addressed by the claims report. The claims report objects to the allowance of seven WARN claims held by persons not on the motion list. These claimants are: Timothy C. Beagle, Danny R. Billrey, Donald E. Ferris, Michael Hager, Martin M. Martin, and Lelia C. Pierri. The parties have not indicated that they are aware of any of these discrepancies nor have they explained them.

ee has objected to the claims and has resisted the motion.[2] The trustee has moved for summary judgment. The employees have moved for partial summary judgment, asking the court to fix the priority status of the claims.

## I.

Former employees of Cargo, Inc. have filed wage claims under the Workers Adjustment and Retraining Act (WARN), 29 U.S.C. §§ 2101 et seq. They ask that these claims be given priority status under 11 U.S.C. § 507(a)(3) as wages earned within 90 days of the debtor's cessation of business. The trustee objects, contending that WARN damages are statutory penalties, not wages. The employees and the trustee have asked the court to determine whether claims under WARN are entitled to priority treatment as wages. They have agreed that the following facts are undisputed: [3]

1. At all relevant times, the Debtor was an employer as defined in Title 29 U.S.C. Section 2101(*l*)(1).

2. On December 23, 1989, the Debtor notified its employees that Debtor would cease business operations that same day and that Debtor's employees would be terminated from their employment effective at the close of business on December 23, 1989.

3. The events described in paragraph 2 of this Statement of Material Facts constitute a "plant closing" as defined in Title 29 U.S.C. Section 2101(a)(2) and resulted in an "employment loss" as defined in Title 29 U.S.C. Section 2101(a)(6)(A) to the Claimants.

4. The plant closing described in paragraph 3 occurred without the Debtor giving the sixty day advance notice required by Title 29 U.S.C. Section 2102(a).

5. On February 3, 1990, the Debtor filed its Chapter 7 bankruptcy petition in this case.

6. Certain "affected employees" as defined in Title 29 U.S.C. Section 2101(a)(5) have filed claims with the Trustee pursuant to the provisions of Title 29 U.S.C. Section 2104(a)(1) in the amount of $2,000.00 per employee, which claims were denied by the Trustee on May 10, 1991 for the reason that such claims do not constitute claims for accrued wages entitled to priority pursuant to Title 11 U.S.C. Section 507(a)(3).

7. The Debtor has paid all wages owed to the employees who bring the instant claims for work actually performed up to and including December 23, 1989.

8. On May 22, 1991, a timely objection to the Trustee's denial was filed by the law firm of Gaines, Mullen, Pansing & Hogan, Regency One Building, 10050 Regency Circle, Omaha, NE 68114 on behalf of 94 former employees of the Debtor.

## II.

"Summary judgment is appropriate only if there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c)." *Bell v. Stigers*, 937 F.2d 1340, 1342 (8th Cir.1991); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). As to the issue on which the parties seek judgment, there are no disputed material facts. Having considered the undisputed facts and the law, I conclude that the WARN claims constitute

---

**2.** There are three categories of objection. First, trustee objects to nearly all of the claims on the ground that the claimants were not entitled to notification of layoff or closing under the WARN Act and that the claims are not for wages and thus not entitled to priority treatment. Second, trustee objects to 15 of the 106 claims on the additional ground that they were filed late. Third, the trustee has objected to the claims filed by the attorneys for the movants (nos. 304 and 318) on the ground that the claims lack any factual or legal basis. The only issue before the court in the motions for summary judgment is whether the employees' claims for WARN damages are entitled to priority treatment under 11 U.S.C. § 507(a)(3). All other issues will be left for trial.

**3.** The trustee and the employees each filed a statement of material facts not in dispute. The statements were nearly identical but did differ. This memorandum quotes the statements to the extent they were identical.

wages earned by the claimants within 90 days of the cessation of debtor's business. They are entitled to priority status under § 507(a)(3).

### III.

■ The statutory basis for the WARN creditors' claims is the Worker Adjustment and Retraining Notification Act (WARN or ACT) (Pub.L. No. 100–379, 102 Stat. 890 (1988) (codified at 29 U.S.C. §§ 2101–2109 (1991))). The Act requires certain employers to provide their employees with advance notice of a plant closing or a mass layoff.

The Act states in pertinent part: "An employer shall not order a plant closing or mass layoff until the end of a 60–day period after the employer serves written notice of such an order—(1) ... to each affected employee...." 29 U.S.C. § 2102(a)(1).

The damage provision of the Act is 29 U.S.C. § 2104:

[a]ny employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—

(A) back pay for each day of violation at a rate of compensation not less than the higher of—

(i) the average regular rate received by such employee during the last 3 years of the employee's employment; or

(ii) the final regular rate received by such employee....

According to the Act, "[s]uch liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer." 29 U.S.C. § 2104(a)(1)(B). An employer who fails to give the required notice to a unit of local government is subject to a civil penalty of not more than $500.00 for each day of violation. 29 U.S.C. § 2104(a)(3). The remedies provided by WARN constitute the exclusive remedies for any violation of its provisions, and no federal court has the authority to enjoin a plant closing or mass layoff. 29 U.S.C. § 2104(b).

Bankruptcy Code § 507(a)(3) provides priority payment for

(3) ... allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business whichever occurs first; but only

(B) to the extent of $2,000.00 for each such individual.

■ The crux of trustee's argument is that wages under § 507(a)(3) must be earned by a claimant's performance of work and that WARN damages cannot be wages because they are awarded to punish the employer without reference to work or damage. Trustee contends that the WARN claims are instead "statutory penalties" intended by Congress to punish entities which violate the Act. In order to promote the goal of equality of distribution, the statute establishing claim priorities is narrowly construed. *Trustee of Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2nd Cir.1986). The WARN statute, on the other hand, is to be construed broadly. *Solberg v. Inline Corp.*, 740 F.Supp. 680, 685 (D.Minn.1990). WARN itself describes the employer's liability to an employee as "back pay." 29 U.S.C. § 2104(a)(1)(A). Congress described the employer's liability to a local government unit as a "penalty." 29 U.S.C. § 2104(a)(3). Congress is presumed to know the meanings of the words which it employs and to intend their plain and ordinary application. *United States v. Sotelo*, 436 U.S. 268, 286–87, 98 S.Ct. 1795, 1806, 56 L.Ed.2d 275 (1978). Congress could have, but did not label the employer's liability to the employee as a "penalty."

The trustee argues that the statute is penal in nature because the damages

awarded to an employee for violation of the notice provision are awarded without reference to actual damages. The trustee points out that under the statute, there is no deduction from WARN damages for wages earned by the employee from another job obtained after the plant closure or layoff. "The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public, or a wrong to the individual...." *Huntington v. Attrill,* 146 U.S. 657, 668, 13 S.Ct. 224, 228, 36 L.Ed. 1123, 1128 (1892). The purpose of WARN is to provide "protection to workers, their families and communities by requiring employers to provide notification ... of plant closings and mass layoffs." Department of Labor, Employees Benefits, 20 C.F.R. 639.1(a). "Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will also allow these workers to successfully compete in the job market." *Id.*

It is true that a displaced employee might obtain an award of damages under WARN and yet obtain a new job quickly enough so that he or she suffers no lost work days. But the same is often true of contractual severance pay provided to an employee. Severance pay generally has the same purpose as the WARN Act—to alleviate the hardship to the terminated worker. *See, Trustees of Amalgamated Ins. Fund v. McFarlin's, Inc.,* 789 F.2d at 104. The trustee relies on *Hultgren v. County of Lancaster, Neb.,* 913 F.2d 498 (8th Cir.1990) for the proposition that WARN damages are punitive. This reliance is misplaced. *Hultgren* involved two awards under the Fair Labor Standards Act (29 U.S.C. § 216(b) (1991)): an award for unpaid wages and an award for liquidated damages in an amount equal to the wages. The Circuit Court found that provision for the liquidated damages was punitive. It did not conclude that the unpaid wages were. 913 F.2d at 508–09. WARN does not provide for punitive damages or liquidated damages. The only recovery is for the loss of notice on termination.

Given the purposes of the WARN Act, I conclude that it is remedial, not punitive in nature. *Solberg v. Inline Corp.,* 740 F.Supp. at 685. The "back pay" liability of the employer is comparable to privately negotiated severance pay. It is severance pay in lieu of notice, imposed by statute. It is a "quasi contractual" obligation. *See, National Labor Relations Board v. Killoren,* 122 F.2d 609, 612, *reh'g denied* (8th Cir.1941). *See also, Nathanson v. NLRB,* 344 U.S. 25, 27, 73 S.Ct. 80, 82, 97 L.Ed 23 (1952). As a statutorily imposed form of severance pay, it is "wages" within the meaning of § 507(a)(3) of the Code.

■■■ The trustee contends that even if the liability is construed as wages under 11 U.S.C. § 507(a)(3), the "back pay" was not earned within the 90 days before the debtor ceased operations. There are two major types of severance pay—pay at termination in lieu of notice of termination and pay at termination based on the employee's length of service with the employer. *Matter of Health Maintenance Foundation,* 680 F.2d 619, 621 (9th Cir.1982). WARN damages are more similar to the first type— pay at termination in lieu of notice. It is earned, not over a prior period of employment, but upon termination. *In re Guardianship Trust and Home Program, Inc.,* 80 B.R. 268, 269–70 (Bankr.D.N.H.1987), *In re Elliott Wholesale Grocery Co.,* 98 F.Supp. 1017, 1019 (S.D.Cal.1951). I do not find persuasive the trustee's argument that those employees employed continuously by Cargo after May 23, 1989 must have earned the WARN back pay prior to the 90–day priority period. That argument assumes that only employees who were employed for 120 days are entitled to WARN damages. This is not the case. WARN provides for 60 days advance notice of closing or layoff. Damages are determined by the period of the violation but are limited to the lesser of 60 days of violation or one-half of the number of days the employee was employed. Under the Act, an injured employee with two days' tenure could ob-

tain one day of WARN damages. The provision, 29 U.S.C. § 2104(a)(1)(B), is a cap on damages, not an earnings accrual provision.

Cargo violated the WARN statute when it ceased operations without any advance written notice to its employees. In this case, the "period of the violation" was 60 days, although subsequent to closing, the employer could have reduced the amount of its liability by making payments to its employees pursuant to 29 U.S.C. § 2104(a)(2). Within the meaning of § 507(a)(3), the employees "earned" the WARN pay upon termination, although the exact amount of damages would be determined in the ensuing period after consideration of mitigating payments by the employer.[4]

## CONCLUSION

The employees' claims arising under 29 U.S.C. §§ 2101 and 2104 are unsecured claims for wages earned within 90 days of the cessation of business by the debtor, Cargo, Inc., and are entitled to priority status under 11 U.S.C. § 507(a)(3).

## ORDER

IT IS ORDERED that the trustee's motion for summary judgment is denied, and the claimant's motion for partial summary judgment is granted.

IT IS ORDERED that the clerk shall set a scheduling conference for these contested matter proceedings at which time the court will set final trial to determine the allowability and amounts of individual WARN claims and the allowability and status of the fee claim of claimants' attorneys.

SO ORDERED.

4. In closing, the court should mention a potential paradox in the treatment of WARN damages under § 507(a)(3). Section 507(a)(3) requires the employee to earn the wages within "90 days before" the date the debtor ceases business or files bankruptcy, whichever event occurs first. If the employee becomes entitled to WARN damages when the debtor ceases business without notice, then it is arguable that the WARN damages could never be earned in the 90 days before cessation, since they are earned on the day of cessation. I do not believe Congress could have intended such a result, especially when cessation occurs within 90 days before bankruptcy. It is more reasonable to conclude that the mandated use of the earlier of the two benchmark dates was for the protection of the employee, not as a limitation on priority status. It would protect employees from losing priority status on wage claims by virtue of an employer's ceasing business, waiting 90 days and then filing bankruptcy. Even if it were a limitation, the court would avoid its harsh result in this case by finding and concluding that Cargo ceased business on December 24, the first day it did not operate, and that the employees became entitled to WARN damages on December 23, when Cargo ordered the close of its business without notice.