## WHOLESALE AND RETAIL FOOD DISTRIBUTION LOCAL 63, etc., et al., Plaintiffs,

v.

## SANTA FE TERMINAL SERVICES, INC., et al., Defendants.

### No. CV 91–3230 WJR (Kx).

United States District Court, C.D. California.

April 28, 1993.

328

Robert D. Vogel, Wohlner, Kaplon, Phillips, Vogel & Young, Encino, CA, for plaintiffs.

James A. Bowles, Hill, Farrer & Burrill, Los Angeles, CA, for defendants.

## MEMORANDUM AND ORDER

REA, District Judge.

This action came on for court trial December 9, 1992, before the Court, the Honorable William J. Rea presiding. Robert D. Vogel of Wohlner, Kaplon, Phillips, Vogel & Young, appeared on behalf of plaintiffs and James A. Bowles of Hill, Farrer & Burrill on behalf of defendants. The parties agreed that the issue of damages, if necessary, be bifurcated from the liability phase of the trial. After an eight (8) day court trial, on the issue of liability, the Court ordered the parties to submit written closing arguments. Based upon evidence introduced and adduced during the course of trial, the arguments of

counsel and the applicable authorities, the Court rules as follows.

The following issues must be resolved:

(1) Should the Court reanalyze the statute of limitations issue;

(2) Whether a mass layoff within the meaning of the Worker Adjustment and Retraining Notification Act ("WARN"), 29 U.S.C. § 2101, *et seq.*, occurred;

(3) If a mass layoff occurred, whether defendant Santa Fe Terminal Services Inc.'s ("SFTSI") failure to give sixty (60) days notice of its cessation of operations at the Los Angeles Santa Fe Railway terminal was excused by the unforeseeable business circumstance exception to WARN;

(4) Whether defendants' violation of WARN, if any, was based on a reasonable good faith belief that their actions were not in violation of the Act.

## I. FACTS

Defendant Atchison, Topeka and Santa Fe Railroad Company ("Railway") and defendant SFTSI are employers as defined by WARN, 29 U.S.C. § 2101(a)(1). SFTSI is a wholly owned subsidiary of Railway. Railway owned, maintained and operated an intermodal rail terminal located in the City of Commerce, California, known as the Los Angeles Hobart Yard ("Hobart Yard").

Railway and SFTSI entered into a service agreement, by which SFTSI would perform ramping and deramping of rail freight at the Hobart Yard. From April 1, 1988, through March 31, 1990, plaintiffs were signatory to the National Master Freight Agreement (referred to as "NMFA" or "collective bargaining agreement"), which enunciated the terms and conditions of employment for individuals employed by SFTSI, and represented by plaintiff unions for purposes of collective bargaining. On or about February 22, 1990, Railway terminated the service agreement, effective March 31, 1990. On March 1, 1990, SFTSI notified the plaintiff labor representatives in writing that SFTSI would be permanently laying off all employees assigned to the Los Angeles Hobart Yard as of March 31, 1990. The layoff did in fact occur and as of April 1, 1990, SFTSI no longer performed the ramping and deramping services for Railway.

On June 14, 1991, plaintiff labor representatives filed the instant action for violation of WARN, alleging that defendants laid off employees without the required WARN notice.

## II. DISCUSSION

### A. *The Worker Adjustment and Retraining Notification Act*

WARN, 29 U.S.C. § 2101, *et seq.*, governs the instant action. WARN requires that employers give sixty (60) days written notice to employees prior to a mass layoff. 29 U.S.C. § 2104(a)(1). An employer who orders a mass layoff in violation of the sixty (60) day notice requirement is liable for back pay for each day of violation. The maximum violation period for which back pay liability may be imposed is sixty (60) days. 29 U.S.C. § 2104(a)(1)(B).

### B. *The Statute of Limitations*

The Court has previously addressed the statute of limitations issue on defendants' motion for summary judgment. In an order dated July 31, 1992, the Court adopted the three year statute of limitations contained in California Code of Civil Procedure § 338. Defendants argue, for the second time, that the instant action is barred by the statute of limitations. In spite of the fact that this issue was previously ruled upon, an analysis follows because both parties have thoroughly addressed and briefed the issue.

■ The WARN Act does not contain a statute of limitations, thus the Court must determine which statute of limitations is applicable. The Supreme Court has held "[g]iven our longstanding practice of borrowing state law, and the congressional awareness of this practice, we can generally assume that Congress intends by its silence to borrow state law." *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987). Alternatively, the Court may choose to adopt a federal statute of limitations when there exists an analogous federal law and federal policies which make the federal statute of

limitations more appropriate. *Del Costello v. Teamsters*, 462 U.S. 151, 171–72, 103 S.Ct. 2281, 2294, 76 L.Ed.2d 476 (1983).

■ Defendants now urge the Court to adopt the six-month statute of limitations contained in the National Labor Relations Act, ("NLRA"), 29 U.S.C. § 160(b). Defendants failed to raise this argument earlier when the issue was briefed on a motion for summary judgment. Plaintiffs contend that defendants have waived the NLRA statute of limitations defense, relying on *U.S. Postal Serv. v. American Postal Workers Union*, 893 F.2d 1117 (9th Cir.1990).[1] However, the instant case is distinguishable from the *U.S. Postal Serv.* case because defendants pled the six-month NLRA statute of limitations as an affirmative defense in their Answer to plaintiffs' Complaint. In spite of pleading this statute in their Answer, defendants failed to raise the issue during the summary judgment proceeding or in the Pretrial Conference Order.[2] Accordingly, defendants have waived it.[3]

■ Thus, having concluded the NLRA statute of limitations should not be applied, the Court must determine the "appropriate state statute of limitations." *International Union v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–13, 16

L.Ed.2d 192 (1966). The resolution of this issue "depends upon an examination of the nature of the federal claim and the federal policies involved." *United Parcel Serv., Inc. v. Mitchell*, 451 U.S. 56, 60–61, 101 S.Ct. 1559, 1562–63, 67 L.Ed.2d 732 (1981).

Defendants argue the one year statute of limitations found in California Code of Civil Procedure § 340(1) should be applied. Plaintiffs' employees were laid off on March 31, 1990, and the instant action was filed on June 14, 1991. If the Court applies section 340(1), plaintiffs' action is barred.[4]

■ During the summary judgment hearing plaintiffs argued the Court should apply section 338, a three year statute of limitations. Section 338 applies to "[a]n action upon liability created by statute, other than a penalty or forfeiture." The Court concludes, as it did in its July 31, 1992 order, that the applicable provision of the WARN Act is not a statute for penalty or forfeiture, and as a result, C.C.P. § 338 is the most appropriate statute of limitations.[5]

There is a paucity of cases which have addressed the statute of limitations applicable to cases brought pursuant to WARN. In *In re Cargo, Inc.*, 138 B.R. 923 (Bankr. N.D.Iowa 1992), the court rejected the trust-

1. In *U.S. Postal* the court found defendant had waived its statute of limitations defense because it failed to affirmatively plead or assert the six-month statue of limitations, in addition to not relying on the six-month statute in opposing plaintiffs' motion for summary judgment. *Id.* 893 F.2d at 1122.

2. The Pretrial Conference Order provides, in part, "[t]he pleadings which presently raise the issues are ... Defendants' Answer." Defendants argue that this reference to their Answer constitutes the inclusion of the NLRA six month statute in the Pretrial Conference Order. The Pretrial Conference Order also provides, "[t]he following issues of law, and no others, remain to be litigated at trial...." Defendants fail to raise the NLRA statute as an issue of law remaining to be litigated. As a result of this inconsistency in the Pretrial Order, defendants have failed to put the NLRA statute in issue at trial.

3. Defendants' argument is based entirely on a recent District Court opinion, *Newspaper and Mail Deliverers' Union of New York and Vicinity*

*v. United Magazine Co.*, 809 F.Supp. 185 (E.D.N.Y.1992), which adopted the NLRA six month statute of limitations to claims brought under WARN.

4. Section 340(1) mandates a one year statute of limitations for: "[A]n action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the state, except when the statute imposing it prescribes a different limitation."

5. In determining the appropriate statute of limitations "[T]he initial inquiry is whether all claims arising out of a federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon varying factual circumstances and legal theories presented in each individual case.'" *Agency Holding Corp. v. Malley–Duff & Assocs.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987), *quoting Wilson v. Garcia*, 471 U.S. 261, 268–70, 105 S.Ct. 1938, 1942–43, 85 L.Ed.2d 254 (1985). The instant action is brought for back pay under 29 U.S.C. § 2104.

ee's contention that WARN damages are statutory penalties. The court held, "[G]iven the purposes of the WARN Act, I conclude that it is remedial, not punitive in nature." *Id.* at 927, *citing, Solberg v. Inline Corp.*, 740 F.Supp. 680, 685 (D.Minn.1990). The court stated that the "back pay liability of the employer is comparable to privately negotiated severance pay. It is severance pay in lieu of notice, imposed by statute." *Id.*

■ WARN was enacted to "soften the blow" on the employee who is confronted with a sudden loss of employment. In spite of the fact that WARN provides for monetary awards in excess of compensatory damages (because the employee receives pay for the number of days the employer was in violation, regardless of how many days the employee is actually out of work), section 338 is the most "appropriate" statute of limitations with respect to the provisions of WARN in issue because its purpose is not penal in nature.[6]

■ The Court concludes, as it did on defendants' motion for summary judgment, the statute of limitations contained in California Code of Civil Procedure § 338 is applicable.[7]

## C. *Whether a Mass Layoff Occurred*

■ A mass layoff within the meaning of WARN occurs when at least fifty employees suffer an employment loss at a single site of employment, which affects at least 33% of active employees. 20 C.F.R. § 636.3(c).

Defendants argue that the Los Angeles Hobart Yard, which included both SFTSI and Railway employees, constitutes a single site of employment. Defendants' argument is based on the assertion that there is a single product or service at the Hobart Yard (rail transportation), and all of the employees work in an integrated operation to provide this product and service. Plaintiffs, on the other hand, contend that SFTSI and Railway constitute two separate sites of employment because SFTSI and Railway employees performed separate and unique, albeit related, tasks independently of each other.

The Court need not determine whether the Hobart Yard constitutes a single site of employment or two separate sites of employment because even assuming the Hobart Yard is a single site of employment, a mass layoff has occurred.[8] According to the evidence presented at trial two hundred and sixty one (261) SFTSI employees were permanently displaced as of March 31, 1990.[9] At the time of the employment loss there were 512 Railway employees working in the

---

**6.** In the instant action, plaintiffs have alleged a violation of § 2104(a)(1)(A) and (B) for back pay and benefits under the employee benefit plan, and not under the penal section of WARN, § 2104(a)(3).

Section 340 can only be read to apply to the civil penalty provisions of WARN, § 2104(a)(3), and not the back pay and benefits provisions.

**7.** Notwithstanding the fact that the Court concludes that defendants have waived the NLRA six month statute of limitations, the Court believes that this statute does not have retroactive effect, and would not bar plaintiffs' claim in any event. The Supreme Court looks to three factors to determine whether a judicial decision should be applied retroactively, which include: (1) whether it establishes a new decision of law by deciding an issue of first impression, which was not clearly foreshadowed; (2) whether its retroactive application will further retard the purposes of the rule in question; and (3) whether applying the new decision will produce an inequitable result. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971).

While the applicable WARN statute of limitations has been addressed by previous courts,

*United Magazine, supra,* is the first court to conclude that the NLRA's six month statute of limitations was applicable to the WARN Act. Its application would produce an inequitable result in this case inasmuch as plaintiffs should not be deemed to have been on notice that a six month statute would be applicable. *See, McNaughton v. Dillingham Corp.*, 722 F.2d 1459 (9th Cir.1984) (wherein the court held that the decision in *Del Costello, supra,* should not be given retroactive application).

**8.** Assuming arguendo that plaintiffs are correct and SFTSI and Railway constitute two separate sites of employment, a stronger argument can be made that a mass layoff occurred in view of the number of SFTSI employees who were displaced on March 31, 1990.

**9.** 40 Local 63 members, 150 Local 208 members, (Exhibit 7, and deposition of Chavez), 46 non-union employees (43 on the payroll and 3 on leaves of absence without pay) (Anderson's testimony, Exhibit 22), 17 Machinists Union members (Exhibit 8), and 8 Local 495 members (Exhibits 23 and 44).

Hobart tower and/or terminal.[10] Two hundred and sixty one (261) employees were displaced out of seven hundred and seventy three (773) total employees assigned to work at the Hobart terminal, this total is above the mandated 33%. Accordingly, a mass layoff occurred.

### D. The Unforeseeable Business Circumstance Exception

■ WARN provides that less than sixty (60) days notice is allowed where the mass layoff is caused by an unforeseeable business circumstance. Specifically, the unforeseeable business circumstance exception provides:

> An employer may order a plant closing or mass layoff before the conclusion of the 60–day period if the plant closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required.

29 U.S.C. § 2102(b)(2)(A).

The DOL Regulations, 20 C.F.R. § 639.-9(b)(1), states:

> an important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control ... The employer must exercise such commercially reasonable business judgment as would a similarly situated employer in predicting the demands of a particular market....

Defendant bears the burden of proof that the foregoing conditions have been met. 20 C.F.R. § 639.9.

The Court concludes that the unforeseeable business circumstance exception is applicable. SFTSI's sole customer at the Los Angeles Hobart Yard, Railway, unexpectedly terminated the service agreement on February 22, 1990, effective March 31, 1990.[11] In *Jones v. Kayser–Roth Hosiery, Inc.,* 748 F.Supp. 1276, 1289 (E.D.Tenn.1990), the court found that the employer's loss of a major customer constituted an unexpected business circumstance.

During trial plaintiffs introduced evidence that Railway was dissatisfied with SFTSI's performance in early 1990. This information, however, did not rise to the level of putting SFTSI on notice that the service agreement would be terminated. The court in *Jones* addressed this issue, finding the mere fact that the major customer had voiced complaints about the quality of merchandise at least sixty (60) days prior to the plant closure did not trigger the statutory notice requirement. *Id.* at 1287–88. Railway's complaints about SFTSI's performance did not trigger the sixty (60) day notice provision of WARN, nor did it make the unforeseeable business circumstance exception inapplicable.

In addition, plaintiffs argue that since two of SFTSI's five board of directors, Jenkins and McInnes, made the initial decision to cancel the service agreement, and three of SFTSI's directors, Jenkins, McInnes and Haverty, made the decision to award the bid to ITS, the events can not be considered unexpected. In spite of the interrelations between SFTSI and Railway, the evidence presented at trial supports defendants' position that SFTSI did not have any knowledge prior to February 22, 1990 that the service agreement was to be terminated.

Plaintiffs rely, in part, on the Second Circuit's holding in *Local 217 v. MHM, Inc.,* 976 F.2d 805 (2d Cir.1992).[12] In *Local 217* the court rejected a WARN employer's contention that it was powerless to comply with WARN's notice provisions because it could

---

**10.** Railway's Eastern Avenue Regional Manager's Office (which housed 13 Claims and 16 Regional Manager employees), located approximately (3) miles away from the entrance to the Hobart terminal, constitutes a separate site of employment. Thus, these employees are not included in the 512 Railway employees figure.

**11.** SFTSI was afforded the opportunity to bid to perform the ramp and deramp work for the time period after March 31, 1990.

**12.** In *Local 217* employer MHM managed a hotel during the period of CCELP's ownership of the hotel. MHM was a party to a collective bargaining agreement with Local 217, which represented the hotel's employees, and was responsible for the hiring and firing of employees.

not control the timing or the decision of the entity which decided to discontinue the hotel's operations. *Id.* at 808. The court reasoned that nothing prevented MHM from charging a management fee that took potential liability under WARN into account, or alternatively, from entering into a contractual relationship with CCELP that would have required sufficient notice of closure to allow MHM to comply with WARN requirements. It is noteworthy that in *MHM* the court failed to address the explicit statutory provision of the unforeseeable business circumstance exception. The Court declines to follow this decision because it renders the unforeseeable business circumstance exception virtually ineffective.

■ According to the unforeseeable business circumstance exception, an employer "shall give as much notice as is practicable and at that time shall give a brief statement of the basis for reducing the notification period." 29 U.S.C. § 2102(b)(3).[13] Based on the following, the Court concludes that defendant SFTSI failed to give as much notice as soon as was practicable.

On March 1, 1990, SFTSI's Secretary–Treasurer Anderson sent a letter to the plaintiff unions which stated that SFTSI may have to cease operations at the Los Angeles Hobart Yard as of March 31, 1990. (Exhibit 7, a copy of the letter; Exhibit 43, the envelope in which the letter was mailed, postmarked March 1, 1990).

In addition to Exhibit 7, SFTSI provided telephonic notice to the plaintiff unions on February 23, 1990. Notwithstanding the evidence of actual notice, WARN requires "written notice." 29 U.S.C. § 2102(a).

■ The 7 day delay in sending out notice (February 22, 1990 through March 1, 1990) does not constitute "notice as soon as practicable." Local 208 did not receive notification until March 5, 1990. Local 63 contends they never received notification. The

testimony of Anderson supports the conclusion that he mailed a notification letter (Exhibit 7) to Local 63 on March 1, 1990. A properly addressed letter placed in the care of the Postal Service is presumed to have been delivered. *Hoffenberg v. Commissioner of Internal Revenue*, 905 F.2d 665, 666 (2d Cir.1990). SFTSI properly mailed its letter to Local 63, thus it is deemed to have received notice on March 5, 1990. The Court finds that SFTSI should have sent out WARN notification on February 23, 1990. Accordingly, SFTSI is in violation of WARN for six (6) days.

Notwithstanding the foregoing, the unforeseeable business circumstance exception will not apply if SFTSI and Railway constitute a "single employer."

### *Whether SFTSI and Railway Constitute a Single Employer*

Plaintiffs assert that SFTSI and Railway constitute a single employer under WARN.

#### *(a) Does the Court have Jurisdiction over this Issue?*

■ Defendants contend that the Court lacks jurisdiction to determine whether Railway and SFTSI constitute a single employer for purposes of WARN. Defendants argue that the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.*, provides that the resolution of the single employer issue is within the exclusive jurisdiction of the National Mediation Board ("NMB").

The cases cited by defendants stand for the proposition that the NMB has exclusive jurisdiction over the issue of who is to represent employees for collective bargaining purposes, not for the issue of whether or not Railway and SFTSI constitute a single business enterprise within the meaning of WARN.[14] The instant action raises the question of whether Railway and SFTSI constitute a single employer within the meaning

---

13. In *Jones, supra,* the Court found it was reasonably practicable for an employer to issue notice of the mass layoff within two days. *Id.* at 1288.

14. "Neither federal nor state courts have jurisdiction to interpret labor contracts subject to the

[Railway Labor Act]; the function is assigned exclusively to the system of boards of adjustment." *International Brotherhood of Teamsters v. Texas Int'l Air,* 717 F.2d 157, 159 (5th Cir. 1983).

of WARN. Defendants have failed to cite authority to support the contention that this issue is within the exclusive jurisdiction of the NMB. The Court concludes it has jurisdiction to determine the matter.

### (b) Single Employer

■ WARN provides that business entities related to an "employer" can themselves be considered an "employer" by reason of that relationship. Specifically, the relevant regulation defines "employer" in the parent-subsidiary situation as follows:

> ... (2) under existing legal rules, independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as separate employers or as part of the parent or contracting company depending upon the degree of their independent from the parent. Some of the factors to be considered in making this determination are (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) dependency of operations.

20 C.F.R. § 639.3(a)(2).

The DOL's Analysis of Final Rule and Comments provides that the above quoted definition of a WARN "employer" is,

> intended only to summarize existing law that has developed under State Corporations laws and such statutes as the NLRA, the Fair Labor Standards Act (FLSA) and the Employee Retirement Income Security Act (ERISA). The Department does not believe that there is any reason to attempt to create new law in this area especially for WARN purposes when relevant concepts

of State and federal law adequately cover the issue....

In *Local 397 v. Midwest Fasteners, Inc.*, 779 F.Supp. 788 (D.N.J.1992), a case cited by both parties for its analysis of the single employer issue, the court in interpreting the DOL regulation, developed a three part analysis to determine whether a parent and subsidiary should be treated as separate entities under WARN. According to *Local 397* the determination of whether a parent can be held liable for the WARN Act violation of its subsidiary requires applying the following tests: (1) state corporate law, (2) single employer theory under federal law, and (3) the WARN regulations.[15] While the single employer theory and the WARN regulations are similar, California corporate law presents substantive distinctions.[16]

Plaintiffs argue that two entities may constitute a business enterprise for purposes of WARN yet not constitute an alter ego for purposes of other labor statutes. Plaintiffs contend that California alter ego law is relevant, but should be relegated to the "lowest level of importance." Plaintiffs fail to cite any authority to support this position.[17]

Based on the persuasive holding in *Local 397*, and the DOL regulations and comments, the Court finds that California corporation law, as well the provisions of WARN must be applied to determine whether SFTSI and Railway constitute a single employer.

### (i) WARN Regulation -factors to be considered:

#### (aa) Common Ownership;

■ It is undisputed that SFTSI is the wholly owned subsidiary of Railway. Thus, there is common ownership. According to

---

**15.** The court in *Local 397* states, "the D.O.L. believes that to determine whether a subsidiary is sufficiently independent of the parent so as to negate the WARN liability of the parent, both state corporation law and federal common law as it relates to federal employment statutes should be evaluated in conjunction with the five factors enumerated in the regulation." *Id.* at 791.

**16.** In deciding whether parent corporations are to be considered separate from their subsidiaries, the federal courts generally respect corporate separateness unless to do so would work an

injustice. *Edwin K. Williams and Co. v. Edwin K. Williams*, 542 F.2d 1053 (9th Cir.1976).

**17.** Plaintiffs cite *A. Dariano & Sons v. Dist. Council No. 33*, 869 F.2d 514 (9th Cir.1989), which fails to support their position. In *A. Dariano & Sons* the court noted the distinction between the single employer and alter ego test, however, the court did not hold that the alter ego test should not be applied in reaching the ultimate conclusion of whether one single employer exists for purposes of the NLRA. In addition, this case was addressing the NLRA, as opposed to WARN.

*Local 397, supra,* this is the least important factor to be considered. *Id.* at 767.

### (bb) *Common Management;*

During 1990 Jenkins, McInnes and Haverty were all directors of SFTSI as well as Railway. Thus, there was overlap in management.

### (cc) *De Facto Exercise of Control;*

Defendants presented evidence which supports the conclusion that SFTSI operated independently of Railway. According to the declaration of SFTSI President Dushek, SFTSI and Railway "have historically maintained, and presently maintain, completely independent labor related functions." This averment is supported by the fact that SFTSI handled its own labor relations, labor negotiations and labor arbitrations. SFTSI made its own decisions in bidding to retain the ramp service contract. The unions bargained only with SFTSI, and never proposed that Railway should be a party to the collective bargaining agreement. SFTSI controlled its own negotiations with its unions for concessions to make its bid competitive. Discipline and labor relations at the plant level were separate and distinct.

### (dd) *Personnel Policies;*

SFTSI's ERISA employee benefit programs are controlled by Railway. Moreover, both corporations maintain the same severance benefit program. In addition, SFTSI legal compliance manual [Exhibit 3] requires SFTSI employees to bring complaints dealing with sexual harassment and employment discrimination to the immediate attention of Railway corporate employees.

### (ee) *Dependency of Operations;*

Although SFTSI performed services for Railway, it operated independently. Railway turned down SFTSI's bid on the ramp contract. Instead of accepting SFTSI's bid, Railway entered into a ramp contract with ITS which submitted a lower bid. SFTSI

and Railway each had separate supervisors and managers. (See discussion above).

### (ii) California Corporation Law [18]

The common law standard for applying the alter ego doctrine, *Mesler v. Bragg Management Co.,* 39 Cal.3d 290, 300–01, 216 Cal.Rptr. 443, 702 P.2d 601 (1985), includes a finding a unity of both ownership and interest. While unity of ownership has been established in this case, plaintiff has failed to put forth sufficient evidence of unity of interest to warrant disregarding the corporate structure. SFTSI was adequately capitalized; SFTSI had functioning officers and directors; SFTSI observed corporate formalities; and, there was no evidence that SFTSI commingled funds with Railway, or that they siphoned funds from Railway.

Plaintiffs argue that if the Court finds that SFTSI and Railway constitute separate employers it will result in inequity. The mere fact that SFTSI may be unable to satisfy a judgment is not the controlling factor in resolving the issue.

Based on the foregoing, the Court concludes that SFTSI and Railway do not constitute a single employer.

### E. *Good Faith Defense*

29 U.S.C. § 2104(a)(4) provides a "good faith" defense for employers, stating:

> If an employer which has violated the Act proves to the satisfaction of the court that the act or omission that violated this Act was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of this Act, the court may, in its discretion reduce the amount of the liability or penalty provided for in this section.

SFTSI contends that they did everything within their power to comply with the provisions of WARN. Defendants cite *UAW v. Shadyside Stamping Corp.,* 6 I.E.R. 1640, 1991 WL 340191 (S.D.Ohio 1991) in support

---

**18.** Plaintiffs state "[p]laintiffs have never contended defendants constitute a joint employer and/or *alter ego.*" Plaintiffs' Rebuttal Summation, p. 22. Because plaintiffs do not contend that SFTSI is Railway's alter ego, it would appear that SFTSI and Railway can not be deemed a single employer as a matter of law. As noted above, plaintiffs contend that this analysis is not to be applied to the determination of whether the two entities constitute a business enterprise for purposes of WARN.

of this contention. In *Shadyside* the court found that the imposition of a penalty or award was inappropriate because the employer had proceeded in good faith pursuant to § 2104(a)(4). The facts in *Shadyside* are clearly distinguishable from the facts in this case. In *Shadyside,* the union's claim was based on the employer's technical violation of the interim interpretative regulations issued by the DOL. Additionally, the employer notified the union of the future layoffs five months before the layoffs were scheduled to occur, and sent the WARN notification within one week of receiving notification that the layoffs were to occur. The court recognized that at that time the interim interpretative rules "were generally not known" and employer was in substantial compliance with WARN. *Id.*

The Court concludes defendants do not fall under the good faith exception. SFTSI delayed for one week after receiving notice of termination to notify plaintiffs that they may be laid off on March 31, 1990, namely one month later. This does not constitute good faith.

## III. CONCLUSION

Based on the foregoing, a mass layoff within the meaning of WARN occurred. Defendant SFTSI failed to give (60) sixty day notice, and thus, is in violation of WARN's notice requirement. Defendant SFTSI is excused however from the (60) sixty day notice requirement based on the unforeseeable business circumstance exception. The unforeseeable business circumstance exception is applicable, based in part, on the Court's conclusion that SFTSI and Railway do not constitute a single employer. Defendant SFTSI failed to give notice as soon as practicable, and as such is in violation of the WARN Act for six days.

IT IS HEREBY ORDERED.